IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA ROGERS, | ) |
| | ) |
| Plaintiff, | ) Case No. 07 C 6876 |
| | ) |
| v. | ) |
| | ) |
| AMERIPRISE FINANCIAL SERVICES, INC. | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY ARBITRATION**

Plaintiff, for his Memorandum in Opposition to Defendant's Motion to Stay Arbitration, states as follows:

**INTRODUCTION**

Plaintiff filed his original complaint[1] in the above-captioned matter on October 30, 2007. The gravamen of Plaintiff's claim is that Defendant's termination of Plaintiff's employment is illegal and tortious because it had a causal relationship to Plaintiff's numerous refusals to undertake action violative of the Illinois Criminal Code and the Illinois Securities Law of 1953, as was ordered of him by his supervisors.[2] At it's core, the Complaint relies exclusively on Illinois public policy to render illegal Defendant's termination of Plaintiff's employment. It is equally fundamental that the Complaint hinges in no way on any form of privately held rights, be they derivative of the Financial Industries Regulatory Authority ("FINRA"), contract, quasi-contract or otherwise.

---

[1] Citations to said complaint will be hereinafter referred to as "Complaint." The Complaint is attached hereto and labeled "*Exhibit A*."
[2] *Exhibit A, pp. 9-11*.

Further, the damages sought by Plaintiff for the wrong occasioned upon him by Defendant are those suffered subsequent to termination. Specifically, Plaintiff seeks the following damages:

### C. Computation of Damages

> Rogers has calculated damages upon Ameriprise's illegal termination of his employment which: (a) caused Rogers to suffer lost *future* wages, stock options and bonuses that were rightly owed to Rogers if Ameriprise had not violated his rights; (b) caused Rogers to seek alternate employment, requiring the expenditure of significant sums of money to start up a business, which would have not been required of Rogers if Ameriprise had not violated his rights; and (c) caused Rogers to suffer a revenue differential between what he was earning at Ameriprise in wages, stock options and bonuses and his present losses and future earnings. For responsive documents, see Plaintiff's Disclosures, pp. 000597-000691.
>
> The computation of damages pursuant to Counts I and II of the Complaint is based upon lost compensation *after* the date of his employment termination, being June 19, 2007. In 2006, Rogers' employment annual compensation exceeded $440,000.00. Applying said figure over the remainder of Rogers' professional life after June 19, 2007, Rogers' compensatory damages exceed $5,000,000.00. Rogers further predicates his computation of damages upon punitive damages that he is entitled to from Ameriprise based upon damages suffered by Rogers *after* June 19, 2007. (Emphasis added).[3]

Plaintiff filed a claim before FINRA on December 28, 2007. In contrast to the case before this Court, Plaintiff's FINRA challenge to Defendant's termination of Plaintiff's employment is predicated entirely on privately held rights, asserting:

> ...Respondent failed to follow its own Consequence Management Guidelines when dealing with the termination or investigation of the business practices of Claimant to the extent that business practices were the reason for the termination, and also failed to follow its own guidelines relating to Human Resource issues if that

---

[3] See Plaintiff's Initial Rule 26 Disclosures ("*Exhibit B*"), p.3

2

was the basis for the termination. Simply stated, Respondent terminated Claimant wrongfully and did so for reasons which will become apparent through the Discovery process.[4]

That Plaintiff's FINRA claim entirely rests upon rights distinctly different than those conferred upon him by Illinois public policy is additionally evidenced by Plaintiff's written statement to FINRA.[5]

Moreover, the damages sought by plaintiff in his FINRA claim are those suffered as a result of remuneration owed to him by Defendant that he earned *prior* to his employment termination, alleging:

> Simply stated, Claimant was wrongfully terminated from the employ of Respondent and was terminated in direct violation of Respondent's own employment manual and policies. The termination was contrived with vindication and with the intent of preventing Claimant from obtaining compensation and stock of Respondent to which Claimant *was entitled*.[6] (Emphasis added).

Defendant's Motion to Stay Arbitration[7] should be denied because: (1) bifurcated proceedings have been judicially authorized in cases similar to the instant action; (2) the rights upon which Plaintiff relies in his FINRA claim are independent to and of utterly to no avail to him in the instant action; (3) the damages sought by Plaintiff in the instant action are unavailable to him in the FINRA claim; and (4) Ameriprise has waived the right to object to arbitrating before FINRA.

## ARGUMENT

**I.    Bifurcated Proceedings Have Been Judicially Authorized in Cases Similar to The Instant Action.**

---

[4] See Plaintiff's Statement of Claim before FINRA ("*Exhibit C*"), p.2.
[5] See Plaintiff's Written Statement to FINRA ("*Exhibit D*"), pp.1-2.
[6] *Exhibit C*, p.1.
[7] Citations to Defendant's Motion to Stay Arbitration shall hereinafter be referred to as "Motion."

In ***Dean Witter Reynolds, Inc. v. Byrd**, 470 U.S. 213, (1985)*, defendant sued his broker-dealer as a result of the plaintiff's sale of securities. The defendant's claim in the trial court was made pursuant to the Securities Exchange Act of 1934 as well as pendent state law claims. The Plaintiff sought to compel an arbitration regarding the state law claims, which the United States Supreme Court ultimately granted. In addressing the required bifurcation of claims between securities litigation and the arbitration of pendent state law claims, the court wrote:

> Bifurcated proceedings might be the result in several kinds of cases involving securities transactions. For example, since this Court's decision in ***Wilko v. Swan***, see n. 1, *supra*, claims arising under § 12(2) of the Securities Act of 1933 may not be resolved through arbitration, and when a court is confronted with a § 12(2) claim, pendent state claims, and a motion to compel arbitration, bifurcated proceedings might result. If ***Wilko*** applies to claims arising under other provisions of the Securities Acts, the same situation would arise. Also, when as here a federal securities claim and pendent state-law claims are filed and a party to the arbitration agreement asks only that the district court compel arbitration only of the pendent state claims, the prospect of a bifurcated proceeding arises. Finally, federal courts have addressed the same issue when confronted with federal antitrust actions and pendent state claims. See, *e.g.*, ***Lee v. Ply\*Gem Industries, Inc., 193 U.S.App.D.C. 112, 121, 593 F.2d 1266, 1274-1275, and n. 67*** (holding that arbitrable claims should not become "subject to adjudication in court merely because they are related to nonarbitrable claims," when the dispute arises out of a contract containing an agreement to arbitrate) cert. denied, *441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979). Id., 219.*

Similarly, in ***Andreu v. United Parcel Service, Inc. Slip Copy**, 2008 WL 1774990 (N.D.Ill.2008)*, the plaintiff challenged his employment termination by filing a law suit alleging retaliatory discharge. The defendant sought summary judgment asserting that the issues concerning the plaintiff's employment termination were pending before an arbitrator at the same time they were pending before the court. *Id. \*3.* In denying summary judgment during the

4

pendency of an arbitration regarding the same issues, the court relied upon **_Bettis v. Oscar Mayer Foods Corp., 878 F.2d 192, 196-97 (7th Cir.1989)_**, finding:

> The Seventh Circuit reiterated that the substantive rights at issue in a retaliatory discharge claim are 'independent of the collective bargaining relationship.' (Citations omitted). The Seventh Circuit reached that conclusion, notwithstanding the fact that the employer in *Bettis* asserted a defense to the claim that related to a provision in the collective bargaining agreement. (Citations omitted). The Seventh Circuit noted, 'the mere fact that the state-law analysis might require the state court to focus on the same facts that would control resolution of an employee's contractual remedy is not enough to require preemption of the state law claim.'" (Citations omitted). **_Andreu_**, *4.

Applying the above-cited authorities to the case at bar, Plaintiff seeks to advance substantive rights which inure to his benefit as found within the Illinois Criminal Code and Illinois Securities Law of 1953 (to the extent they serve as public policy predicates to the tort of retaliatory discharge). The FINRA rules afford no comparable means of redress. If Plaintiff were capriciously required to elect forums, the absence of these substantive rights in FINRA's rules would render them hortatory in appearances but impotent in effect, as applied to those who refused to undertake illegal action as a condition to continued employment.

Further, the bifurcation of proceedings, as authorized in **_Byrd_**, is particularly appropriate in cases where securities-related wrongdoing is alleged. This is such a case. Specifically, as the FINRA claim focuses on whether Defendant "failed to follow its own Consequence Management Guidelines"[8] and "failed to follow its own guidelines relating to Human Resources" to ascertain whether Plaintiff's termination was wrongful, does one really expect that FINRA is the appropriate referee over the substantive rights and interplay peculiar to the Illinois Criminal Code and Blue Sky laws? Surely not. FINRA's rules extend to appropriately resolve the former, but the latter is best left to this State's judiciary.

---

[8] *Exhibit C*, p.1.

Finally, it is worth noting of the cases cited by Defendant in its Motion and accompanying memorandum (*Cabinetree of Wisconsin, Inc. v. Kraftmaid Cainetry, Inc.*, 50 F.3d 388 (1995), *St. Mary's Med. Ctr. Of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585 (1992), *Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 64 (2000), *Wilson Sporting Goods Co. v. Penn Partners*, 2004 WL 2033063 (N.D. Ill. 2004), *Fogel v. Gordon & Glickson, P.C.*, 2004 WL 866412 (N.D. Ill. 2004), *Glazer's Distrib. Of Illinois, Inc. v. NWS-Illinois, LLC*, 376 Ill. App. Ct. 411(2007), *Grossinger North Autocorp, Inc. v. Tsend-Auysh*, 2005 WL 4006535 (2005), *Schroeder Murchie Laya Assoc., Ltd. v. 1000 West Lofts, LLC*, 319 Ill. App. 3d 1089 (2001) and *Yates v. Doctor's Assoc., Inc.*, 193 Ill. App. 3d 431 (1990)) two glaring distinctions exist between each and every such case and the case before the Court. First, none of Defendant's cited cases are retaliatory discharge cases which implicated the "substantive rights" found to exist in *Andreu*. Second, in every case cited by Defendant, the issues and alleged rights controverted in the arbitrations were identical to those issues and rights litigated in the judicial proceedings. This stands in stark contrast to the controversy referred to in *Byrd*, in which a bifurcation of proceedings was ruled to be proper, as would be for the instant action.

II. **The Rights Upon Which Plaintiff Relies in His FINRA claim Are Independent to And of No Avail to Him in The Instant Action.**

The Illinois Supreme Court first recognized the tort of retaliatory discharge in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172 (1978). To assert a claim of retaliatory discharge, a plaintiff must establish that (a) his employment was terminated, (b) the termination was in retaliation for his activities, and (3) the discharge violates a clear mandate of public policy. *Belline v. K-Mart Corp.*, 940 F.2d 184, 186 (7th Cir. 1991). Retaliatory discharge as a cause of action is a narrow

6

exception to the "at-will-employee-doctrine," or, that is, the general rule that an employer can discharge an employee for any reason.

Only terminations pertaining to public policy are covered. See, ***Barr v. Kelso-Burnett Co., 106 Ill.2d 520 (1985)*** (no retaliatory discharge claim stated because it is not the public policy of Illinois that free speech and other constitutional guarantees limit the hiring and firing decisions of private companies).

The Illinois Supreme Court has defined "clear mandate of public policy" as "a matter [which] strikes at the heart of a citizen's social rights, duties and responsibilities." ***Palmateer v. International Harvester Co., 85 Ill.2d 124, 130 (1981).*** It is an axiom that retaliatory discharge is not sustainable where it is clear that only private interests are at stake. *Id.* Only where "the court recognized that an employer could effectively frustrate a significant public policy by using its power of dismissal in a coercive manner" has a claim for retaliatory discharge been recognized. ***Fellhauer v. City of Geneva, 142 Ill.2d 495, 509 (1991).***

Illinois courts have repeatedly expressed their reluctance to expand the tort of retaliatory discharge. ***Hicks v. Resolution Trust Corp., 970 F.2d 378 (7th Cir. 1992).*** In particular, courts have declined to recognize this cause of action in cases involving internal employer/employee disputes which do not constitute violations of Illinois State or federal public policy and/or those which are covered by a bargaining-unit contract. ***Pratt v. Caterpillar Tractor Co., 149 Ill.App.3d 588 (3rd Dist. 1986).***

Applying these authorities to the instant action, had Plaintiff plead the facts alleged in his FINRA claim in the Complaint, he would have hard been pressed to defeat a motion to dismiss the same for failure to state a cause action. Simply put, Plaintiff does not have the option given the status of Illinois law to ask a judicial tribunal to remedy a situation where Defendant "failed

7

to follow its own Consequence Management Guidelines"[9] and/or "failed to follow its own guidelines relating to Human Resources". These rights are not provided for by the strictures of Illinois or federal public policy. Given that this State does not recognize the aforesaid allegations as a means of seeking judicial intervention, to compel Plaintiff to elect one cause of action over another arbitrarily requires him to waive privately-held rights granted him through FINRA or public policy. This harsh result cannot be within the law's intendment.

### III.   The Damages Sought by Plaintiff in The Instant Action Are Unavailable to Him in The FINRA Claim.

As it pertains to the separateness of remedies that Plaintiff seeks in the two actions, in **_Reinneck v. Taco Bell Corp., 297 Ill.App.3d 211, 217 (1998)_**, the appellate court recognized a plaintiff's right to seek future wages as recompense for an employer's retaliatory discharge of an employee. This right of recovery does not exist for a claimant under FINRA's regulatory rules.

For Plaintiff to have sought only an arbitration of the issues involving his employment termination under the rights afforded to him exclusively by the FINRA rules would have necessarily required him to waive any claim for future wages. To be clear, Plaintiff is not seeking any form of double recovery. Rather, Plaintiff is seeking to be made whole in different forums for completely different measures of recovery. In FINRA, Plaintiff seeks what he earned prior to his employment termination as a result of Ameriprise's conduct in contravention to the rules of FINRA. In the case before the Court, Plaintiff seeks those damages that he is entitled to for lost future damages as a result of Ameriprise's tortious conduct.

---

[9] *Exhibit C*, p.1.

8

None of the cases cited by Defendant stand for the proposition that Plaintiff has to elect between lost past damages and lost future damages. To so require would visit upon Plaintiff an injustice not found within the law.

IV. **Through Their Agreement To Be Bound By The Rules Of Finra, The Issue Raised In The Motion To Stay Can Only Be Decided By The Arbitration Panel Assigned To Hear The Arbitration.**

It is a well-established principle that the general presumption that arbitrability is a matter for the courts is overcome when the parties to a contract agree to be bound by the Rules of an arbitration forum, and those Rules unmistakably evidence the intent of the parties to submit disputes over arbitrability, to that forum. *Alliance Bernstein Investment Research and Management, Inc., et al. v Alliance Capital Management Corp., et al., 445 F. 3rd 121 2nd Cir. (2006).*

FINRA Rule 10324[10] provides that the arbitrators shall be empowered to interpret and determine the applicability of all provisions under the Code [and that] such interpretations shall be final and binding upon the parties.

Given that Plaintiff has filed the arbitration through FINRA, and that Defendant has filed its Answer[11] and other pleadings, there is no dispute that the parties to the arbitration conceded jurisdiction to FINRA and that the issues raised in the Motion herein must be decided by the arbitration panel. Therefore, the Motion to Stay should be denied.

## CONCLUSION

For the reasons stated above, Plaintiff requests of this Honorable Court that it enter an Order denying Defendant's Motion to Stay Arbitration, together with any and all other relief that the Court deems just.

---

[10] FINRA Rule 10324 is attached hereto as "*Exhibit E*"
[11] Ameriprises' Answer to Rogers' Complaint before FINRA is attached hereto as "*Exhibit F*"

9

Dated: June 23, 2008                              Respectfully submitted,

                                                                        /s/ Troy C. Owens
                                                                       One of the Attorneys for Plaintiff
                                                                       JOSHUA ROGERS

Prepared by:
Troy C. Owens
Barney, Owens, Laughlin & Arthur, LLP
9 W. Crystal Lake Rd., Suite 210
Lake in the Hills, Illinois 60156

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2008, I electronically filed the foregoing **Memorandum in Opposition to Defendant's Motion to Stay Arbitration** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Paul Fox
Steven M. Malina
Beth Black
Greenberg Traurig, LLP
77 W. Wacker Drive, 25th Floor
Chicago, IL  60601

By:   /s/ Troy C. Owens
      Troy C. Owens